IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DIX and AARON KESSLER, on behalf of themselves and all others similarly situated, | § § § § | Civil Action No. 3:17-cv-3249 |
| Plaintiffs, | § § | |
| v. | § § | CLASS ACTION COMPLAINT |
| SILVERLEAF RESORTS, INC., CERBERUS CAPITAL MANAGEMENT, L.P, SL RESORT HOLDINGS INC., ORANGE LAKE COUNTRY CLUB, INC., and ORANGE LAKE HOLDINGS, LLLP, | § § § § § § | (JURY TRIAL) |
| Defendants. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Christopher Dix and Aaron Kessler, individually and on behalf of all others similarly situated (collectively, "Plaintiffs") file this Original Complaint against Defendants Silverleaf Resorts, Inc., Cerberus Capital Management, L.P., SL Resort Holdings Inc., Orange Lake Country Club, Inc., and Orange Lake Holdings, LLLP (collectively, "Defendants"), and in support thereof would show as follows:

### INTRODUCTION

1.     Plaintiffs, on behalf of themselves and all others similarly situated, bring this class action against Defendants to recover unpaid overtime compensation and all other damages and relief allowed pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS Section 115/1 *et seq.* ("IWPCA") and Illinois Minimum Wage Law, 820 ILCS Section 105/1 *et seq.* ("IMWL").

2.     This action seeks equitable relief, back pay, compensatory and liquidated damages,

attorney's fees and costs, and pre-judgment and post-judgment interest for Defendants' willful failure to pay overtime compensation and/or minimum wages and other damages pursuant to the IWPCA and IMWL to Plaintiffs and all others similarly situated in the course of their employment with Defendants.

3.      Plaintiffs, on behalf of themselves and all others similarly situated bring this class action to recover overtime compensation, minimum wages and other wages, liquidated damages, attorneys' fees, litigation expenses, costs of court, pre-judgment and post-judgment interest and injunctive relief under the provisions of the IWPCA and IMWL.

4.      Plaintiffs and all others similarly situated demand a jury trial.

## PARTIES

**PLAINTIFFS**

5.      Plaintiff Christopher Dix is a former employee of Defendants, one or more of them, as defined by 29 U.S.C. § 203(e) within the State of Illinois during the statutory period. Mr. Dix worked for Defendants as a sales employee at the sales office of timeshare resorts owned and/or operated by Defendants in the State of Illinois within the requisite statutory time period.  Plaintiff Christopher Dix was paid on a commission only basis and worked more than 40 hours in a work week without being paid overtime compensation. Mr. Dix was also not provided with guaranteed minimum wages.

6.      Plaintiff Aaron Kessler is a former employee of Defendants, one or more of them, as defined by 29 U.S.C. § 203(e) within the State of Illinois during the statutory period. Mr. Kessler worked for Defendants as a sales employee at the sales office of timeshare resorts owned and/or operated by Defendants in the State of Illinois within the requisite statutory time period. Plaintiff Aaron Kessler was paid on a commission only basis and worked more than 40 hours in a work

week without being paid overtime compensation. Mr. Kessler was also not provided with guaranteed minimum wages.

7.      At all times relevant hereto, Plaintiffs were "employees" of Defendants within the meaning IMWL, 820 ILCS § 105/3(d) and IWPCA, 820 ILCS § 115/2.

DEFENDANTS

8.      Defendant Silverleaf Resorts, Inc. ("Silverleaf") is a Texas corporation that conducts business in the State of Texas and in this District. Silverleaf Resorts, Inc. employed all of the Plaintiffs and similarly situated persons within Illinois.

9.      Defendant Cerberus Capital Management, L.P. ("Cerberus") is a Delaware corporation that conducts business in the State of Texas and in this District.  Cerberus Capital Management, L.P. employed all of the Plaintiffs and similarly situated persons within Illinois.

10.     Defendant SL Resort Holdings Inc. ("SL Resort") is a Delaware corporation that conducts business in the State of Texas and in this District.  SL Resort Holdings Inc. employed all of the Plaintiffs and similarly situated persons within Illinois.

11.     Defendant Orange Lake Country Club, Inc. is a foreign corporation that conducts business in the State of Texas and in this District. Orange Lake Country Club, Inc. employed all of the Plaintiffs and similarly situated persons within Illinois.

12.     Defendant Orange Lake Holdings, LLLP is a foreign corporation that conducts business in the State of Texas and in this District. Orange Lake Holdings, LLLP employed all of the Plaintiffs and similarly situated persons within Illinois.

13.     At all relevant times hereto, Defendants were Plaintiffs' "employers" as that term is defined by the IMWL, 820 ILCS 105/3.

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiffs are residents and citizens of the state of Illinois. Defendant Silverleaf Resorts, Inc. is a Texas corporation that conducts business in the state of Texas. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

15.     Venue is proper in the Northern District of Texas because, among other reasons, Defendants are residents of and/or are doing business in this District and a substantial part of the events or omissions giving rise to this lawsuit occurred in Dallas County, Texas.

## FACTUAL ALLEGATIONS

16.     Defendants are in the business of development, marketing and operation of timeshare resorts in various markets nationwide.

17.     On or about May of 2011, Defendant Silverleaf (NASDAQ: SVLF) was acquired by Defendant SL Resort, a wholly-owned subsidiary of Defendant Cerberus.  As a result of the acquisition, Silverleaf became a private company wholly-owned by Defendants Cerberus and SL Resort, and Silverleaf's stock is no longer traded on the NASDAQ.

18.     Through the acquisition, Cerberus and/or SL Resort acquired all of the property, rights, privileges, powers and franchises of Silverleaf.

19.     On or about May 20, 2015, Defendant Silverleaf was again acquired, this time by Defendant Orange Lake Country Club, Inc., a wholly-owned subsidiary of Defendant Orange Lake Holdings, LLLP.

20.     Upon information and belief, Orange Lake Country Club, Orange Lake Holdings, Cerberus Capital Management, and SL Resort Holdings own all of the property, rights, privileges, powers and franchises of Silverleaf.

21.    Upon information and belief, Orange Lake Country Club, Orange Lake Holdings, Cerberus Capital Management, and SL Resort Holdings own all Silverleaf timeshare resorts.

22.    Upon information and belief, through the aforementioned acquisitions, Orange Lake Country Club, Orange Lake Holdings, Cerberus Capital Management, and/or SL Resort Holdings assumed all debts, liabilities and duties of Silverleaf.

23.    Upon information and belief, Orange Lake Country Club, Orange Lake Holdings, Cerberus Capital Management, and SL Resort Holdings own all the debts, liabilities and duties of Silverleaf.

24.    Upon information and belief, after the aforementioned acquisitions, Richard Budd, a director of Silverleaf since 2002 and Chairman of its Audit Committee, serves as Silverleaf's Chairman of the Board.

25.    Further, upon information and belief, after the aforementioned acquisitions, Thomas Morris, who served as Silverleaf's Executive Vice President, Capital Markets and Strategic Development since 2005, serves as Silverleaf's Chief Executive Officer.

26.    Upon completion of the aforementioned acquisitions, Silverleaf continued to operate under the same name "Silverleaf Resorts, Inc."

27.    Upon completion of the aforementioned acquisitions, Silverleaf continued to have its corporate offices in Dallas, Texas.

28.    Upon completion of the aforementioned acquisitions, Silverleaf continued to operate timeshare resorts with a wide array of country club-like amenities such as golf, clubhouse, swimming, tennis, boating and organized activities for adults and children.

29.    Upon completion of the aforementioned acquisitions, Silverleaf continued its business operations of selling timeshare properties with the same motto of providing "high-quality

vacation experiences at affordable prices."

30.    In the past 10 years, Defendants have employed hundreds of individuals in the state of Illinois as sales employees in its sales offices at timeshare resorts including Plaintiffs and those similarly situated.

31.    For purposes of this action, the "relevant period" is defined as such period commencing on the date that is 10 years prior to the filing of this action, and continuing thereafter up to and including the date of judgment or disposition of this matter.

32.    At all relevant times herein, Defendants required Plaintiffs and Class Members to perform off-the-clock work before their paid time began, after their paid time ended, and during uncompensated meal periods. Some or all of this unpaid time was overtime.

33.    Plaintiffs and Class Members' off-the-clock work included pre-shift and post-shift work as well as work during uncompensated meal periods.

34.    Defendants regularly required Plaintiffs and Class Members to work more than 40 hours per workweek without receiving overtime compensation at time and one-half their regular rate of pay for all overtime hours.

## JOINT EMPLOYER ALLEGATIONS

35.    At all relevant times, Defendants have been "joint employers" of Plaintiffs and those similarly situated.

36.    At all relevant times, Defendant Silverleaf Resorts, Inc. has been and continues to be an "employer."

37.    At all relevant times, Defendant Cerberus Capital Management L.P. has been and continues to be an "employer."

38.    At all relevant times, Defendant SL Resort Holdings, Inc. has been and continues

to be an "employer."

39.    At all relevant times, Defendant Orange Lake Country Club, Inc. has been and continues to be an "employer."

40.    At all relevant times, Defendant Orange Lake Holdings, LLLP has been and continues to be an "employer."

**SILVERLEAF RESORTS, INC.**

41.    Upon information and belief, among the facts that demonstrate Defendant Silverleaf Resorts, Inc.'s status as a joint employer are:

a.    Silverleaf has the power to hire and fire Plaintiffs and those similarly situated;

b.    Silverleaf controls the work schedules of Plaintiffs and those similarly situated selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

c.    Silverleaf controls the work environment of Plaintiffs and those similarly situated at the timeshare resorts owned and/or operated by Defendants;

d.    Silverleaf controls the access of Plaintiffs and those similarly situated to the timeshare resorts owned and/or operated by Defendants;

e.    Silverleaf keeps and maintains the work attendance records of Plaintiffs and those similarly situated;

f.    Silverleaf maintains the employment records of Plaintiffs and those similarly situated;

g.    Silverleaf determines the commission rates of Plaintiffs and those similarly situated;

h.    Silverleaf determined that Plaintiffs and those similarly situated would be compensated on a commission basis;

i.    Silverleaf is responsible for providing the tools used by Plaintiffs and those similarly situated for selling timeshare properties at timeshare resorts owned and/or operated by

Defendants;

j.      Plaintiffs and those similarly situated work on the premises—timeshare resorts—owned, operated and/or controlled jointly by Defendants, including Silverleaf; and

k.      Plaintiffs and those similarly situated perform work which is necessary, routine and an integral part of the daily business of Defendants' daily business operations in selling timeshare properties.

CERBERUS CAPITAL MANAGEMENT, L.P.

42.      Upon information and belief, among the facts that demonstrate Defendant Cerberus Capital Management, L.P.'s status as a joint employer are:

a.      Cerberus has the power to hire and fire Plaintiffs and those similarly situated;

b.      Cerberus controls the work schedules of Plaintiffs and those similarly situated selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

c.      Cerberus controls the work environment of Plaintiffs and those similarly situated at the timeshare resorts owned and/or operated by Defendants;

d.      Cerberus controls the access of Plaintiffs and those similarly situated to the timeshare resorts owned and/or operated by Defendants;

e.      Cerberus keeps and maintains the work attendance records of Plaintiffs and those similarly situated;

f.      Cerberus maintains the employment records of Plaintiffs and those similarly situated;

g.      Cerberus determines the commission rates of Plaintiffs and those similarly situated;

h.      Cerberus determined that Plaintiffs and those similarly situated would be compensated on a commission basis;

i.      Cerberus is responsible for providing the tools used by Plaintiffs and those similarly

situated for selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

j.      Plaintiffs and those similarly situated work on the premises—timeshare resorts—owned, operated and/or controlled jointly by Defendants, including Cerberus; and

k.      Plaintiffs and those similarly situated perform work which is necessary, routine and an integral part of the daily business of Defendants' daily business operations in selling timeshare properties.

**SL RESORT HOLDINGS, INC.**

43.     Upon information and belief, among the facts that demonstrate Defendant SL Resort Holdings, Inc. status as a joint employer are:

a.      SL Resort has the power to hire and fire Plaintiffs and those similarly situated;

b.      SL Resort controls the work schedules of Plaintiffs and those similarly situated selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

c.      SL Resort controls the work environment of Plaintiffs and those similarly situated at the timeshare resorts owned and/or operated by Defendants;

d.      SL Resort controls the access of Plaintiffs and those similarly situated to the timeshare resorts owned and/or operated by Defendants;

e.      SL Resort keeps and maintains the work attendance records of Plaintiffs and those similarly situated;

f.      SL Resort maintains the employment records of Plaintiffs and those similarly situated;

g.      SL Resort determines the commission rates of Plaintiffs and those similarly situated;

h.      SL Resort determined that Plaintiffs and those similarly situated would be compensated on a commission basis;

i.      SL Resort is responsible for providing the tools used by Plaintiffs and those similarly situated for selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

j.      Plaintiffs and those similarly situated work on the premises—timeshare resorts— owned, operated and/or controlled jointly by Defendants, including SL Resort, and;

k.      Plaintiffs and those similarly situated perform work which is necessary, routine and an integral part of the daily business of Defendants' daily business operations in selling timeshare properties.

**ORANGE LAKE COUNTRY CLUB, INC.**

44.     Upon information and belief, among the facts that demonstrate Defendant Orange Lake Country Club, Inc.'s status as a joint employer are:

a.      Orange Lake Country Club has the power to hire and fire Plaintiffs and those similarly situated;

b.      Orange Lake Country Club controls the work schedules of Plaintiffs and those similarly situated selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

c.      Orange Lake Country Club controls the work environment of Plaintiffs and those similarly situated at the timeshare resorts owned and/or operated by Defendants;

d.      Orange Lake Country Club controls the access of Plaintiffs and those similarly situated to the timeshare resorts owned and/or operated by Defendants;

e.      Orange Lake Country Club keeps and maintains the work attendance records of Plaintiffs and those similarly situated;

f.      Orange Lake Country Club maintains the employment records of Plaintiffs and those

similarly situated;

g.      Orange Lake Country Club determines the commission rates of Plaintiffs and those similarly situated;

h.      Orange Lake Country Club determined that Plaintiffs and those similarly situated would be compensated on a commission basis;

i.      Orange Lake Country Club is responsible for providing the tools used by Plaintiffs and those similarly situated for selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

j.      Plaintiffs and those similarly situated work on the premises—timeshare resorts—owned, operated and/or controlled jointly by Defendants, including Orange Lake Country Club; and

k.      Plaintiffs and those similarly situated perform work which is necessary, routine and an integral part of the daily business of Defendants' daily business operations in selling timeshare properties.

### ORANGE LAKE HOLDINGS, LLLP

45.     Upon information and belief, among the facts that demonstrate Defendant Orange Lake Holdings, LLLP's status as a joint employer are:

a.      Orange Lake Holdings has the power to hire and fire Plaintiffs and those similarly situated;

b.      Orange Lake Holdings controls the work schedules of Plaintiffs and those similarly situated selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

c.      Orange Lake Holdings controls the work environment of Plaintiffs and those similarly

situated at the timeshare resorts owned and/or operated by Defendants;

d.      Orange Lake Holdings controls the access of Plaintiffs and those similarly situated to the timeshare resorts owned and/or operated by Defendants;

e.      Orange Lake Holdings keeps and maintains the work attendance records of Plaintiffs and those similarly situated;

f.      Orange Lake Holdings maintains the employment records of Plaintiffs and those similarly situated;

g.      Orange Lake Holdings determines the commission rates of Plaintiffs and those similarly situated;

h.      Orange Lake Holdings determined that Plaintiffs and those similarly situated would be compensated on a commission basis;

i.      Orange Lake Holdings is responsible for providing the tools used by Plaintiffs and those similarly situated for selling timeshare properties at timeshare resorts owned and/or operated by Defendants;

j.      Plaintiffs and those similarly situated work on the premises—timeshare resorts— owned, operated and/or controlled jointly by Defendants, including Orange Lake Holdings; and

k.      Plaintiffs and those similarly situated perform work which is necessary, routine and an integral part of the daily business of Defendants' daily business operations in selling timeshare properties.

## SUCCESSOR LIABILITY ALLEGATIONS

46.      Upon information and belief, Defendants Cerberus Capital Management, L.P., SL Resort Holdings Inc., Orange Lake Country Club, Inc., and Orange Lake Holdings, LLLP are liable

to Plaintiffs and those similarly situated as a successor employer because:

a.      There has been a substantial continuity of business operations of Silverleaf since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings;

b.      Since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings, Silverleaf operates the same or substantially the same timeshare resorts that were operated prior to the acquisition;

c.      Since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings, Silverleaf operates using the same or substantially the same supervisory personnel as used before the acquisition;

d.      Since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings, Silverleaf operates the same or substantially the same workforce as used before the acquisition;

e.      Since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings, Silverleaf uses the same equipment and facilities as used prior to the acquisition;

f.      Since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings, Silverleaf provides the same services to the same type of clientele as existed prior to the acquisition;

g.      The same jobs exist under substantially the same working conditions as existed prior to the aforementioned acquisitions;

h.      Since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings, Silverleaf uses the same methods of production and sales

process as existed prior to the acquisitions;

i.     Since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings, Silverleaf produces the same product—timeshare properties—that was produced prior to the acquisitions;

j.     Since the aforementioned acquisitions by Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings, Silverleaf no longer maintains assets sufficient to directly provide relief to Plaintiffs. Defendants Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings are the only Defendants with assets sufficient to satisfy Plaintiffs' claims. Plaintiffs have requested and Silverleaf, Cerberus, and SL Resort have refused to provide Plaintiffs with a formal document stating that Silverleaf is able to provide relief directly in the event Plaintiffs succeed on their claims. Thus, Plaintiffs have included Orange Lake Country Club, and Orange Lake Holdings as Defendants with successor liability, and;

k.     Cerberus, SL Resort, Orange Lake Country Club, and Orange Lake Holdings each had knowledge of the potential liabilities of Silverleaf under the IWPCA and IMWL, and continued to engage in the same business practices giving rise to IWPCA and IMWL violations during the relevant time period. The overall equities support the imposition of successor liability because the purpose of the IWPCA and IMWL is to protect employees from the actions of their employers, and an employer should not be permitted to escape liability by means of an acquisition that leaves employees, such as Plaintiffs, without recourse to enforce their rights pursuant to the IWPCA and IMWL.

47.    Defendants failed to comply with the IWPCA and IMWL, in that Plaintiffs and those similarly situated performed services for Defendants for which no provisions were made by Defendants to properly pay them guaranteed minimum wages and/or overtime compensation for those

hours worked in excess of forty hours within a work week at a rate of one and one-half times their regular rates of pay.

48.     Plaintiffs and all others similarly situated performed inside sales work and were not paid time and one-half for hours they worked over 40 in a week ("overtime compensation") and/or minimum wages.

49.     Plaintiffs and those similarly situated worked from a timeshare resort sales office.

50.     Plaintiffs and those similarly situated performed all their job duties at timeshare resorts owned and/or operated by Defendants.

51.     Plaintiffs and those similarly situated worked over 40 hours in at least some work weeks while employed by Defendants.

52.     Plaintiffs and the similarly situated persons who may become Plaintiffs in this action are commissioned current and/or former employees of Defendants who worked without being paid overtime compensation and/or guaranteed minimum wages.

53.     Plaintiffs were paid on a commission only basis.

54.     Plaintiffs were not paid guaranteed minimum wages.

55.     Plaintiffs were not paid a salary.

56.     Plaintiffs were not paid overtime compensation at a rate of one and one-half their regular rates of pay for all hours worked in excess of forty hours in a work week.

57.     Defendants did not maintain records of the time worked by Plaintiffs and those similarly situated during the relevant time period.

58.     Defendants did not maintain accurate records of the time worked by Plaintiffs and those similarly situated.

59.     Plaintiffs and those similarly situated are/were non-exempt employees and thus are

owed overtime compensation and minimum wages under the provisions of the IWPCA and IMWL.

60.    Plaintiffs have retained the undersigned counsel to represent them in this action. Pursuant to the IWPCA and IMWL, Plaintiffs are entitled to recover all reasonable attorney's fees, costs, and litigation expenses, including expert fees incurred in this action.

61.    Defendants' practice of requiring or permitting Plaintiffs and those similarly situated to perform work, in the form of spending time or conducting activities for the benefit of Defendants, violates the IWPCA and IMWL because Plaintiffs and those similarly situated worked without receiving compensation at one and one-half times their regular rates of pay ("overtime compensation") for those hours worked in excess of forty hours in a work week.

62.    Defendants' practice as described herein violates the IWPCA and IMWL because they required Plaintiffs and the Class Members to work without legal compensation.

63.    The operation of Defendants' timeshare business, and the wages and compensation of Plaintiffs and the Class Members are substantially similar, if not identical.

64.    Defendants knowingly, willfully or with deliberate indifference failed to pay minimum wages and overtime compensation to Plaintiffs and those similarly situated in violation of the IWPCA and IMWL.

65.    Each of Defendants' violations of the IWPCA and IMWL as asserted herein were committed knowingly, willfully or with deliberate indifference.

66.    The conduct of Defendants, as set out above, has been willful and in bad faith, and has caused significant damages to Plaintiffs and the Class Action Members.  Plaintiffs and the Class Action Members are entitled to liquidated damages for such conduct.

## CLASS ALLEGATIONS

**A.    Definition of Class**

67.    The Class consists of:

All persons who were employed by Defendants (one or more of them) and who worked at Defendants' sales offices in their timeshare resorts in the state of Illinois and were denied overtime compensation and/or guaranteed minimum wages and who had the job title of sales employee, or any similar job title performing similar job duties at any time during the ten-year period preceding the filing of this action through the date of disposition of this matter.

68.    The aforementioned Plaintiffs and Class Members, and any other subclasses to be later defined, are collectively referred to herein as Class Members.

**B.    Class Action Requisites**

69.    Plaintiffs bring these claims for relief for pursuant to the IWPCA and IMWL individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

70.    ***Numerosity***.    Plaintiffs and the Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, there are hundreds of non-exempt sales employees who meet the class definition. The number and identity of the proposed Class Members are readily ascertainable through inspection of Defendants' records.

71.    ***Commonality.***    Common questions of law and fact exist as to members of the class, including but not limited to the following: (a) whether Defendants failed to properly pay Plaintiffs and Class Members guaranteed minimum wages and/or overtime compensation for hours worked in excess of forty hours within a work week at a rate of one and one-half times their regular rates of pay; and (b) whether Defendants violated the IWPCA and IMWL by failing to pay such minimum wages and/or overtime compensation to Plaintiffs and the Class Members.

72.    ***Typicality.***    Plaintiffs' claims are typical of the Class Members' claims. Like other Class Members, Plaintiffs were subject to Defendants' policy and practice of not properly paying minimum wages and/or overtime compensation in violation of Illinois state laws.

73.     _**Predominance.**_     Questions of fact and law common to Plaintiffs and Class Members predominate over any questions affecting only individual members. Defendants' failure to pay its sales employees minimum wages and/or overtime wages as required by the IWPCA and IMWL results from generally applicable policies or practices and does not depend on personal circumstances of the Class Members. Thus, Plaintiffs' experiences are typical of the experiences of Class Members because they sustained damages including non-payment of minimum wages and/or overtime wages as a result of the common policies and practices of Defendants as described herein.

74.     _**Adequacy of Representation.**_     Plaintiffs will fairly and adequately protect the interests of the Class Members and have retained counsel experienced in pursuing complex employment matters and class action/multi-party litigation who will adequately, competently, and vigorously represent the interests of the Class Members. Plaintiffs' claims are not adverse to or in conflict with the claims of the Class Members.

75.     _**Superiority.**_     Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein. Treating this as a class action will permit a large number of persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expenses that numerous individual actions would entail.

## CAUSES OF ACTION

## COUNT 1: VIOLATIONS OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT

76.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

77.     The Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS §§ 115/2 _et seq._ requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after the end of the pay period in which such wages

were earned. The IWPCA also requires employers to pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for each employee.

78.     Defendants violated the IWPCA by regularly and repeatedly failing to properly compensate the Plaintiffs and Class Members for the actual time they worked each week.

79.     Defendants failed to pay guaranteed minimum wages and/or overtime pay and other benefits to the Plaintiffs and Class Members.

80.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members have suffered and will continue to suffer lost wages and other damages.

81.     Plaintiffs and Class Members are also entitled to injunctive relief to prevent Defendants from continuing their violation of these statutory provisions and other appropriate class-wide injunctive relief.

## COUNT 2: VIOLATION OF ILLINOIS MINIMUM WAGE LAW

82.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

83.     Plaintiffs are members of a class that meets the requirements for certification and maintenance of a class action pursuant to Rule 23.

84.     Defendants are "employers" and Plaintiffs and Class Members are "employees" under Illinois Minimum Wage Law ("IMWL"), 820 ILCS §§ 105 *et seq*.

85.     The IMWL, 820 ILCS §§ 105 *et seq.*, requires employers to pay employees minimum wages for all hours worked. Section 105/4(a) of the IMWL requires employers to pay employees one and one-half times their regular rate for all hours worked over forty (40) per work week. Section 105/12 of the IMWL provides that employers who violate the provisions of this act

are liable to affected employees for unpaid wages, costs, attorney's fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments and other appropriate relief.

86.     Defendants violated IMWL, 820 ILCS §§ 105 *et seq.*, by regularly and repeatedly failing to properly compensate Plaintiffs and Class Members for the actual time they worked each week.

87.     Defendants violated IMWL, 820 ILCS §§ 105 *et seq.*, by failing to maintain accurate records of all hours worked by Plaintiffs and Class Members.

88.     Defendants also failed to pay overtime pay and other benefits to Plaintiffs and Class Members.

89.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members have suffered and will continue to suffer lost wages and other damages.

90.     Plaintiffs and Class Members are also entitled to injunctive relief to prevent Defendants from continuing their violation of these statutory provisions and other appropriate class-wide injunctive relief.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray for judgment and relief as follows:

a.     An order certifying that the action may be maintained as a class action;

b.     For compensatory damages in the amount of Plaintiffs' and each Class Members' unpaid wages and overtime from at least 10 years prior to the filing of this action to the present as may be proven pursuant to the IWPCA;

c.     For compensatory damages in the amount of Plaintiffs' and each Class Members' unpaid wages, overtime, and penalties for failing to provide Plaintiffs and each Class Members with itemized wage statements from at least 3 years prior to the filing of this action to the present as may be proven pursuant to the IMWL;

  d.  An award of prejudgment and post-judgment interest;

  e.  An order enjoining Defendants and its agents, servants and employees, from failing to pay all wages owed, and providing inaccurate wage statements;

  f.  All applicable penalties and other damages for the violations set forth herein;

  g.  An award of attorneys' fees, costs, and litigation expenses, as provided by statute; and

  h.  Such other and further relief, at law or in equity, as this Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury to the extent authorized by law.

Dated: November 30, 2017

       Respectfully submitted,

       /s/ Rhonda H. Wills
       Rhonda H. Wills
       State Bar No. 00791943
       Attorney-in-Charge
       WILLS LAW FIRM, PLLC
       1776 Yorktown, Suite 570
       Houston, Texas  77056
       Telephone:  (713) 528-4455
       Facsimile:  (713) 528-2047

       Kobby T. Warren
       State Bar No. 24028113
       WARREN HEALY, PLLC
       1910 Pacific Avenue, Suite 10500
       Dallas, Texas 75201
       Telephone: (214) 999-9499
       Facsimile: (888) 687-8174

       **ATTORNEYS FOR PLAINTIFFS**